```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/6/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LI & FUNG (TRADING) LIMITED,

                        Plaintiff,

    -against-

CONTEMPORARY STREETWEAR, LLC,

                        Defendant.
------------------------------------------------------------X

11 CV 2022 (CM) (DCF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

In this diversity action, Plaintiff Li & Fung (Trading) Ltd. ("Plaintiff") alleges that defendant Contemporary Streetwear, LLC ("Defendant") failed to pay for shipments of goods for which Plaintiff acted as the buying agent, and failed to pay to Plaintiff debts that Defendant had assumed. After Defendant failed to cooperate during the discovery phase of this litigation, the Honorable Colleen McMahon ordered that a default be entered against Defendant and referred the matter to me to conduct an inquest and issue a report and recommendation concerning damages. (Dkt. 36.) For the reasons that follow, I recommend that Plaintiff be awarded compensatory damages in the amount of $1,722,696.50, plus interest, calculated as set out below.

## BACKGROUND

### A. The Parties' Pleadings

Plaintiff's Complaint, dated March 23, 2011, asserts claims against Defendant for: (1) goods sold and delivered, (2) account stated, and (3) breach of contract. (*See generally* Complaint, dated Mar. 23, 2011 ("Compl.") (Dkt. 1).) Specifically, Plaintiff, a Hong Kong corporation, alleges that it entered into an oral agreement (the "Agreement") with Defendant

under which Plaintiff would act as Defendant's agent for buying apparel. (*See* Compl. ¶¶ 1, 7.) Under the Agreement, Plaintiff would place orders for apparel with various vendors around the world on Defendant's behalf, and send invoices to Defendant. (*See id.* ¶¶ 8-9.) According to the Complaint, the Agreement provided for inclusion on the invoices of a commission of five percent, and required Defendant to pay each invoice in full, within 60 days of receipt. (*Id.* ¶¶ 9-10.) Plaintiff further alleges that, from October, 2010, through February, 2011, Plaintiff ordered apparel on Defendant's behalf, delivered it, and sent invoices, all pursuant to the Agreement, but Defendant failed and refused to pay the amounts due. (*Id.* ¶¶ 11-12.) Exhibit A to the Complaint lists 22 allegedly unpaid invoices by date, invoice number, and amount. (Compl., Ex. A.) The listed amounts add up to $1,672,998.96.

Separately, Plaintiff alleges that the parties entered into a written contract (the "Contract") in or about September, 2010, under which Defendant agreed to assume certain obligations of Icer Brands ("Icer"), a licensee of Defendant. (*Id.* ¶ 26.) Under the Contract, Plaintiff released its own outstanding claims against Icer, and Defendant (a) assumed Icer's obligations to pay Plaintiff $48,000 for sample charges, and (b) agreed to take possession of Icer's inventory, sell the inventory, and remit the net proceeds to Plaintiff. (*Id.* ¶ 27.) Plaintiff alleges that the value of the inventory in question is at least $94,307.50. (*Id.*) Plaintiff further alleges that Defendant has not complied with its obligations under the Contract, and, specifically, has refused to remit the required net proceeds to Plaintiff. (*Id.* ¶¶ 28-30.)

On May 18, 2011, Defendant filed an Answer (Answer, dated May 18, 2011 ("Ans.") (Dkt. 9)), which included counterclaims against Plaintiff. In its Answer, Defendant asserted that Plaintiff owed Defendant fiduciary duties and that Plaintiff "often" breached the Agreement by, *inter alia*, "failing to find vendors who could provide . . . goods of sufficient quality, at a

competitive price[,] or deliver such goods on time[,] and by failing to remit payments to vendors on a timely basis." (Ans. ¶ 58.) The goods that were of inferior quality or that were delayed in shipment were allegedly "useless" and caused Defendant to incur additional costs. (Ans. ¶ 59.) Defendant also alleged that Plaintiff would knowingly fail to obtain the lowest price available from vendors, and would instead allow vendors to inflate their invoice prices so that Plaintiff could keep portions of the payments remitted from Defendant above the five-percent agreed-upon commission. (*Id.* ¶ 60.) Defendant asserted counterclaims for an accounting, for breaches of fiduciary duty and contract, for breaches of implied warranties, and for unjust enrichment and faithless servant. (*See id.* ¶¶ 61-88.) Plaintiff denied Defendant's allegations of wrongdoing in an Answer to the counterclaims, dated July 6, 2011. (Dkt. 21.)

### B.   Defendant's Default

After Defendant failed to comply with Court orders, Judge McMahon found Defendant in default, dismissed its counterclaims, and referred the matter to me to conduct an inquest and issue a report and recommendation concerning damages. (Order, dated June 14, 2012 (Dkt. 36).) On June 22, 2012, this Court issued an Order requiring Plaintiff to file and serve on Defendant, no later than July 23, 2012, proposed findings of fact and conclusions of law. (*See* Order, dated June 22, 2012 (Dkt. 38).) The Court cautioned Defendant that if, by August 22, 2012, it did not respond to Plaintiff's submissions or contact the Court in writing to request an in-court hearing, the Court would issue a report and recommendation on the basis of Plaintiff's written submissions alone. (*See id.*)

### C.   Plaintiff's and Defendant's Proposed Findings

Plaintiff filed its proposed findings and a supporting declaration on July 20, 2012. (*See* Proposed Findings of Fact and Conclusion of Law for Damages Inquest, filed July 20, 2012 ("Pl.

Proposed Findings") (Dkt. 39); Declaration of Sean Coxall in Support of Plaintiff's Proposed Findings of Fact and Conclusions of Law in Support of Damages Inquest, dated July 16, 2012 ("Coxall Decl.") (Dkt. 40).) Sean Coxall ("Coxall"), the executive director of one of Plaintiff's divisions, attached 21 unsigned invoices to his declaration (*see* Coxall Decl., Exs. 1-21), which, Coxall claims, "set forth a total Invoice Amount equaling $1,615,215.81" (*id.* ¶ 7). Plaintiff then proposes that the Court find that Defendant owes Plaintiff that $1,615,215.81 under the Agreement, as well as $94,307.50 under the Contract, plus pre-judgment interest on both amounts. (Pl. Proposed Findings, at § II, ¶¶ 7-11.)

As noted above, Plaintiff's Complaint attached a list of 22 invoices, totaling $1,672,998.96 (*see* Compl., Ex. A), but, for some undisclosed reason, at the inquest stage, Plaintiff has chosen to omit the last invoice and subtract its value from the total allegedly due (*see* Coxall Decl., Exs. 1-21). While it is true that subtracting the value of the last invoice from the total listed in the Complaint would yield Plaintiff's currently requested total of $1,615,215.81, that total is not actually the sum of the values of the invoices Plaintiff has submitted, which instead add up to $1,678,389.00.[1]

---

[1] The actual amounts appearing on the 21 invoices supplied to the Court, not including commissions, are as follows:

| | | |
|---|---|---|
| 1. Invoice No. CE15/100255 (dated Nov. 6, 2010): | $ | 14,137.75 |
| 2. Invoice No. CE15/100256 (dated Oct.. 31, 2010): | $ | 151,641.91 |
| 3. Invoice No. NE15/100380 (dated Nov. 2, 2010): | $ | 31,668.00 |
| 4. Invoice No. NE15/100382 (dated Nov. 2, 2010): | $ | 7,764.50 |
| 5. Invoice No. CE15/100258 (dated Nov. 8, 2010): | $ | 23,942.75 |
| 6. Invoice No. CE15/100254 (dated Nov. 1, 2010): | $ | 23,876.30 |
| 7. Invoice No. CE15/100265 (dated Nov. 19, 2010): | $ | 174,690.55 |
| 8. Invoice No. CE15/100266 (dated Nov. 18, 2010): | $ | 114,284.42 |
| 9. Invoice No. CE15/100268 (dated Nov. 16, 2010): | $ | 16,977.60 |
| 10. Invoice No. CE15/100270 (dated Nov. 20, 2010): | $ | 144,740.94 |
| 11. Invoice No. CE15/100273 (dated Nov. 24, 2010): | $ | 100,763.56 |

The discrepancy between the amount Plaintiff requests, based on its original list, and the actual sum of the invoices arises because, on the original list, two of the invoices were said to have values that are several thousand dollars below the actual balances shown on the invoices that Plaintiff has now submitted. First, while Plaintiff initially gave an outstanding amount of $964.56 for the first invoice on the list, invoice number CE15/100255, dated November 6, 2010 (*see* Compl., Ex. A), the actual invoice with that number and date states a balance of $14,137.75 (*see* n.1 *supra*; Coxall Decl., Ex. 1). Second, while Plaintiff gave a value of $64,284.42 for the eighth invoice on its list, invoice number CE15/10266, dated November 18, 2011 (*see* Compl., Ex. A), the actual balance shown on that invoice is $114,284.42, exactly $50,000 higher (*see* n.1 *supra*; Coxall Decl., Ex. 8). Plaintiff offers no explanation for these discrepancies, and indeed appears unaware of them.

Defendant submitted its own proposed findings on August 23, 2012. (*See* Defendant's Proposed Findings of Fact and Conclusions of Law for Damages Inquest, dated Aug. 23, 2012 ("Def. Proposed Findings") (Dkt. 41).)[2] Defendant contests that the Agreement provided for

---

|  |  |
|---|---|
| 12. Invoice No. CE15/100278 (dated Nov. 22, 2010): | $ 17,251.06 |
| 13. Invoice No. CE15/100279 (dated Nov. 26, 2010): | $ 3,308.60 |
| 14. Invoice No. CE15/100267 (dated Nov. 26, 2010): | $ 41,835.00 |
| 15. Invoice No. CE15/100282 (dated Nov. 25, 2010): | $ 138,235.30 |
| 16. Invoice No. CE15/100283 (dated Dec. 4, 2010): | $ 68,348.44 |
| 17. Invoice No. CE15/100291 (dated Dec. 10, 2010): | $ 121,278.10 |
| 18. Invoice No. CE15/110009 (dated Jan. 12, 2011): | $ 142,333.20 |
| 19. Invoice No. CE15/110010 (dated Jan. 10, 2011): | $ 34,951.50 |
| 20. Invoice No. CE15/110018 (dated Jan. 21, 2011): | $ 196,365.73 |
| 21. Invoice No. CE15/110020 (dated Jan. 27, 2011): | $ 109,993.79 |
|  | $1,678,389.00 |

(Coxall Decl. Ex. A.; Coxall Amend. Decl. Ex. 1).

[2] Defendant's submission was made one day past the deadline set by the Court. (*See* Dkt. 38.) Further, Defendant filed the document incorrectly on the Court's Electronic Case Filing ("ECF") system, causing the Clerk to flag the entry with a filing error and instruct

payment of invoices within 60 days (*id.*, at § II, ¶ 5), and also asserts that Plaintiff's evidence is "insufficient as a matter of law to establish that the goods were actually 'received' and 'accepted' by" Defendant (*id.* ¶ 6). Defendant requests leave to offer evidence in "mitigation of damages" as to shipments that arrived damaged or were not received at all. (*Id.*) In addition, Defendant complains of a purported lack of "transparen[cy]" in the process by which Plaintiff calculated its commissions, and asserts that, by charging a "mark-up" on its vendor prices, Plaintiff was actually able to retain more than the agreed-upon five-percent commission. (*Id.* ¶ 8.) Defendant requests a hearing on the issue of how much more Plaintiff's invoices charged over the price that actually was, or should have been, paid to vendors – *i.e.*, on the question of whether Plaintiff inflated the fair price of the goods, as legitimately charged by the vendors, by only five percent, or with another hidden mark-up. (*See id.*)[3] Defendant admits, however, that it breached the Contract regarding Icer and also admits that it owes plaintiff the net proceeds and interest from the sale of Icer Brand's inventory. (*Id.* ¶¶ 10-11.)

Defendant then goes on to propose "additional" findings regarding a separate dispute between KHQ, an affiliated entity of Plaintiff, and C2 Brands, an affiliated entity of Defendant. (*See id.*, ¶¶ 12-13.) Without submitting any documentary evidence in support of its position,

---

Defendant to re-file the document. (*See* Dkt. 41.) Defendant never re-filed, but Plaintiff received and responded to Defendant's Proposed Findings. Despite Defendant's procedural failings, the Court will, in the interest of justice, address the issues raised by Defendant's submission and the merits of Defendant's arguments. *See, e.g., Certain Underwriters at Lloyd's London v. Babcock & Wilcox Co.*, Nos. CIV.A. 01–912, CIV.A. 01–1187, 2001 WL 1588928 (E.D. La. Dec. 7, 2001) (excusing late submission of motion "in the interests of justice" where delay was minimal and did not prejudice opposing party); *cf. Lanfranco v. Abrams*, No. 92 Civ. 5812 (PKL), 1994 WL 267903, at *1 (S.D.N.Y. June 16,1994) (considering petitioner's late-filed objections to a report and recommendation).

[3] Defendant, apparently relying on Plaintiff, also states – incorrectly – that the "invoices set forth amounts owed equaling $1,615,215.81." (Def. Proposed Findings, at 1.)

Defendant asserts that Plaintiff's affiliate owes Defendant's affiliate approximately $1 million, and that Defendant "is entitled to a set off" for that amount against whatever amount the Court may find that Defendant owes Plaintiff in this case. (*Id.* ¶ 13.)

Plaintiff replied to Defendant's Proposed Findings on September 14, 2012. (*See* Plaintiff's Reply to Defendant's Proposed Findings of Fact and Conclusions of Law, dated Sept. 14, 2012 ("Pl. Reply") (Dkt. 43); *see also* Amended and Supplemental Declaration of Sean Coxall in Support of Plaintiff's Reply to Defendant's Proposed Findings of Fact and Conclusions of Law dated Sept. 13, 2012 ("Am. Coxall Decl.") (Dkt. 44).) In its reply, Plaintiff argues that, by seeking to introduce evidence of missing or damaged shipments, Defendant is attempting to challenge its liability through a "back door" and to revive the issues that it raised in its counterclaim, even though liability has already been established by Defendant's default and Defendant's counterclaims have been dismissed. (Pl. Reply ¶¶ 1-5.) Plaintiff also clarifies that the invoices attached to the original Coxall Declaration did not include the five-percent commission. (Id. ¶ 6.) Coxall's amended declaration attaches new copies of the same 21 invoices, this time signed and with a separate line for the five-percent commission. (*See id.* ¶ 6 and Exs. 1-21.) The second set of attached documents also includes the original vendor invoices, which confirm the pre-commission amount shown on each of Plaintiff's invoices, other than the eighth invoice, invoice number CE15/10266, for which Plaintiff provides no corroborating vendor invoice. (*Id.* Exs. 1-21.) Plaintiff states that it is not seeking to recover any of the five-percent commissions, but simply the underlying balances on the vendor invoices. (Pl. Reply ¶ 7.)

Regarding the additional dispute between Plaintiff's and Defendant's affiliates, Plaintiff argues that that dispute is unrelated to this case and thus should not be considered. (*Id.* ¶ 9.)

Further, although Plaintiff apparently concedes that its affiliate does owe a debt, it asserts that the amount owed to Defendant's affiliate is much less than $1 million. (*Id.* ¶ 10.) Like Defendant, Plaintiff provides no documents to support its assertions in this regard, but it states that the amount at issue in this other dispute is only $251,828. (*Id.*) Plaintiff states that it has "no objection" to the Court deducting this lesser amount from any damages award (*id.*), even as Plaintiff also submits that "no basis exists for amending" Plaintiff's previously proposed damages total (*see id.* ¶ 26).

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A plaintiff wishing to recover after default, therefore, must provide evidence of the extent of its damages. *See Vierling Communications GMBH v. Stroyls*, No. 09 Civ. 6654 (CS) (GAY), 2011 WL 5854625, at *1 (S.D.N.Y. Sept. 16, 2011) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)), *report and recommendation adopted by* 2011 WL 5844158 (S.D.N.Y. Nov 21, 2011).

"As to the calculation of damages, plaintiff is entitled to all reasonable inferences from the evidence it offers," *id.*, but the Court "should take the necessary steps to establish damages with reasonable certainty," *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Although the Court may hold a hearing to assess damages, a hearing is not required where a sufficient basis on which to make a calculation exists. (*See* Fed. R. Civ. P. 55(b)(1)-(2) (court "may" conduct hearings on damages); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (court has wide discretion to determine whether an

inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (noting Fed. R. Civ. P. 55(b)(2) "allows but does not require" a hearing).

## II. PLAINTIFF'S CLAIMS

### A. Liability

As a threshold matter, the well-pleaded allegations of Plaintiff's Complaint are sufficient to establish Defendant's liability, both for the allegedly unpaid invoices, and on the Contract by which Defendant allegedly agreed to assume Icer's obligations to Plaintiff.

Under New York law,[4] "[t]o state a claim for an account stated, the plaintiff must plead that: (1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y.2009) (internal citations omitted). A debtor may be deemed to have accepted an invoice as correct if it keeps an invoice for a reasonable period of time without objection, even if the debtor does not affirmatively approve the account presented. *See AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.*, No. 06 Civ. 2142 (GEL), 2007 WL 4302514, at *3 & n.3 (S.D.N.Y. Dec. 7, 2007) (collecting federal and New York cases holding that retention of invoices without objection is sufficient to establish liability "unless fraud, mistake or other equitable considerations are shown"). Plaintiff's Complaint alleges that (1) Plaintiff submitted invoices to Defendant (Compl. ¶¶ 11, 19); (2) Defendant retained the

---

[4] Plaintiff's Proposed Findings are entirely silent on the issue of choice of law. Defendants are also silent on the subject. Under the circumstances, it is appropriate for the Court to apply New York law – the law of the forum state – to Plaintiff's state-law claims. *See Global Switching Inc. v. Kasper*, 2006 WL 1800001, at *11 n.10 (E.D.N.Y. June 29, 2006) ("[W]here, as here, the parties are silent about the choice of law question, the Court may apply the law of the forum." (citing *Michele Pommier Models v. Men Women N.Y. Model Mgmt.*, 14 F. Supp. 2d 331, 336 n.2 (S.D.N.Y. 1998)).

invoices without objection (*id.* ¶ 19); and (3) Defendant had promised to pay the invoices pursuant to the Agreement (*id.* ¶¶ 9-10). Plaintiff has thus sufficiently stated a claim for accounts stated.[5]

To state a claim for breach of contract, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 2013 WL 1294519 at *9 (S.D.N.Y. Mar. 30, 2013) (citations omitted). With respect to the unpaid invoices, Plaintiff alleges that (1) Plaintiff and Defendant entered into the Agreement, under which Plaintiff would act as Defendant's buying agent (Compl. ¶ 7); (2) Plaintiff did act as Defendant's buying agent and had goods delivered to Defendant (*id.* ¶¶ 8-9, 22);[6] (3) Defendant did not pay invoices as required under the Agreement (*id.* ¶¶ 10-12, 23); and (4) Plaintiff thereby suffered losses (*id.* ¶ 24). Accordingly, Plaintiff's allegations, accepted as true, are sufficient to establish Defendant's liability for a breach of contract regarding the invoices.[7]

---

[5] Although, by contending that Plaintiff inflated its invoice amounts, Defendant may be attempting to argue that relevant "equitable considerations" are present here, *see AFL Fresh & Frozen Fruits & Vegetables, Inc.*, 2007 WL 4302514, at *3 & n.3, the Court at this stage should not consider potential affirmative defenses that Defendant might have had absent a default, *see Greyhound*, 972 F.3d at 161. Instead, the only question before the Court as to Defendant's liability is whether the well-pleaded allegations of the Complaint state each element of the relevant claims.

[6] Although Plaintiff does not specifically allege that it performed adequately under the Agreement, a fair reading of the Complaint is that Plaintiff satisfied its contractual obligations by ordering merchandise to be delivered to Defendant.

[7] "A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery." *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995). Having established that Plaintiff is entitled to recover for the unpaid invoices under *two* legal theories, the Court need not reach the question of whether Plaintiff's allegations also adequately establish liability for the same injury under Plaintiff's additional theory of goods sold and delivered.

Regarding Defendant's alleged breach of contract relating to its assumption of the Icer obligations, the Complaint asserts that (1) the parties entered into the Contract (Compl. ¶¶ 26-27); (2) Plaintiff fulfilled its obligations under the Contract (*id.* ¶ 28); (3) Defendant breached its obligations under the Contract (*id.* ¶ 29); and (4) Plaintiff has thereby been damaged (*id.* ¶ 30). These allegations are sufficient to establish Defendant's liability on this additional breach-of-contract claim. Further, Defendant admits that it indeed owes Plaintiff $94,307.50 under the Contract. (*See* Def. Proposed Findings, at § II, ¶¶ 10-11.)

### B. Amount of Plaintiff's Damages

#### 1. Damages from Defendant's Failure To Pay Invoices

Although Plaintiff has submitted both its own invoices to Defendant and the underlying vendor invoices that corroborate the prices shown on Plaintiff's invoices (*see* Coxall Decl., Exs. 1-21), Defendant contends that these invoice numbers are not probative of Plaintiff's actual damages because the invoices hide a "mark-up" that has been "blended" into the cost of goods (*see* Def. Proposed Findings, at § II, ¶ 8). These allegations regarding a hidden mark-up are, however, essentially the same allegations that formed the basis of Defendant's now-dismissed counterclaims. (*See* Ans. ¶¶ 58-60.) Defendant should not be permitted to revive those counterclaims at the inquest stage, and litigate them now, in another guise. Further, the evidence that Plaintiff has provided in support of its claimed damages – *i.e.*, its own invoices, the corroborating vendor invoices, and Coxall's declarations – are typical of the type of evidence that has been held sufficient to support an award of damages upon a defendant's default. *See Conceria Vignola SRL v. AXA Holdings, LLC*, No. 09 Civ. 6684 (GBD) (DF), 2010 WL 3377476, at *3-4 (S.D.N.Y. Aug. 3, 2010) (recommending award of damages, after default, on the basis of copies of invoices and supporting affidavit), *report and recommendation adopted by*

11

2010 WL 3385260 (S.D.N.Y. Aug 23, 2010); *Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc.*, 193 F.R.D. 87, 89 (E.D.N.Y. 2000) (awarding damages, after default, based on invoices and declaration).

Defendant's additional request for permission to offer evidence, "in mitigation of damages," that some of the invoiced goods were never received or accepted (*see* Def. Proposed Findings, at § II, ¶ 6) should also be denied. The question of whether the goods were actually delivered and accepted goes to Defendant's liability, not to Plaintiff's damages. Plaintiff's Complaint alleges that the invoices at issue concern "apparel that [Plaintiff] ordered on [Defendant's] behalf and delivered to [Defendant] pursuant to the Agreement" (Compl. ¶ 11), and, as noted above, these factual allegations must be taken as true for the purposes of this damages inquest. Thus, Defendant cannot now assert that the goods were not, in fact, "delivered." Although Defendant may now wish to contest some of the underlying, liability-establishing facts stated in the Complaint, including whether the goods were in fact delivered and whether the invoices were "accepted" for the purposes of Plaintiff's account-stated claim (*see* Def. Proposed Findings, at § II, ¶ 8), the time for contesting liability has passed. *See, e.g., Greyhound*, 973 F.2d at 161 (2d Cir. 1992). "So long as the facts as painted by the [C]omplaint might have been the case they may not now be successfully controverted . . . . [A party] cannot elect to default and then defend on the merits. It cannot have its cake and eat it too." *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 64 (2d Cir.1971), *rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, (1973) (citations omitted).

For these reasons, even though Defendant has requested a damages hearing, such a hearing is unnecessary. The only issues that Defendant seeks to raise at a hearing are liability-related issues on which it cannot now be heard, and the Court finds that Plaintiff's documentary

submissions provide a "sufficient basis from which to evaluate the fairness" of the claimed damages. *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

The Court must still determine, however, what quantum of damages Plaintiff's submissions support. Plaintiff's Complaint states that the amount of its damages from Defendant's failure to pay invoices is $1,672,998.96. (Compl. ¶ 24.) The Court may, therefore, award up to that amount, to the extent substantiated by Plaintiff's submissions. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *see also Hanjin Intermodal Am., Inc. v. Jindo Trading Corp.*, No. 10 CV 2145 (NGG), 2011 WL 684627 at *5 (E.D.N.Y. Jan. 24, 2011) *report and recommendation adopted by* 2011 WL 686415 (E.D.N.Y. Feb. 15, 2011) (limiting plaintiff's recovery to amount demanded in the complaint).

In its Proposed Findings, Plaintiff states that its damages total $1,615,215.81 (Pl. Proposed Findings, at 1), a lower figure than that given in the Complaint, but Plaintiff then submits invoices with stated balances that actually total $1,678,389 (*see* n.1 *supra*; Am. Coxall Decl., Exs. 1-21), a higher figure than the Complaint's total. As discussed above, the discrepancy is due to differences between Plaintiff's list of invoices, attached to the Complaint, and the actual invoices, with regard to two of the 21 invoices – invoices Nos. CE15/100255 and CE15/100266.

As to the first of these invoices (No. CE15/100255), the Court is satisfied, based on the documentary evidence (*see* Am. Coxall Decl. Ex. 1), that Defendant's non-payment caused Plaintiff a loss in the amount of $14,137.75 – *i.e.*, the amount stated on the invoice itself, notwithstanding that Plaintiff initially listed a lower amount. *Cf. Hanjin Intermodal Am., Inc.*,

13

2011 WL 684627, at *5 (Plaintiff whose documentary evidence at inquest stage did not entirely match a list of submitted invoices was permitted to recover for invoices not on original list).

The discrepancy with regard to the second of these invoices (No. CE15/100266) is, however, more troubling, as the difference between the balance reflected on Plaintiff's original list and the balance stated on the invoice itself is $50,000, an even amount that may suggest partial payment or an agreed discount. Moreover, this invoice is the only one for which Plaintiff has not submitted an underlying vendor invoice to corroborate the amount shown. (*See* Am. Coxall Decl., Ex. 8.) Under these circumstances, I recommend that the Court award Plaintiff only the originally requested amount of $64,284.42 for this particular invoice, as the documentary evidence, together with Plaintiff's submissions, suggest that Plaintiff is owed at least that much money, but not necessarily more.

The total of the invoices Plaintiff has submitted, less $50,000 for invoice No. CE15/100266, comes to $1,628,389. This quantum of damages is supported by Plaintiff's evidence and is less than the amount Plaintiff requests in the Complaint. I therefore recommend that Plaintiff be awarded $1,628,389 in compensatory damages for the unpaid invoices.

### 2. Damages Based on Defendant's Assumption of Icer's Debt

Plaintiff also seeks $94,307.50, the minimum value of Icer's inventory, proceeds from the sale of which Defendant was obligated to remit to Plaintiff. (*See* Pl. Proposed Findings, at § II, ¶ 10.) Defendant admits that it owes Plaintiff this amount (*see* Def. Proposed Findings, at § II, ¶ 10), and I therefore recommend that Plaintiff be awarded damages in the amount of $94,307.50 for the Icer debt.

C.   **Prejudgment Interest**

Plaintiff also seeks an award of prejudgment interest. As Plaintiff's claims are governed by New York law for the purposes of this inquest (*see supra* at n.4), New York's prejudgment interest rules apply. In contract cases, New York allows for the award of prejudgment interest at a rate of nine percent per annum, to be calculated from the earliest ascertainable date on which the cause of action existed. *See* N.Y. C.P.L.R. § 5001; *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998) (under New York law, prejudgment interest is "normally recoverable as a matter of right" in breach of contract actions (internal quotations marks and citation omitted)). Such interest is calculated on a simple-interest basis. *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). "[S]ection 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994); N.Y. C.P.L.R. §5001 ("Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."). Defendant does not dispute that Plaintiff may collect prejudgment interest on whatever amount the Court determines that Defendant owes. (Def. Proposed Findings, at § II, ¶¶ 9, 11.)

1.   **Interest on Damages Stemming from Invoices**

As to Plaintiff's first claim for damages, Plaintiff has, as set out above, submitted to the Court 21 invoices from November, 2010 through January, 2011 (*see supra* at n.1), for which payments were due at various points between January and March, 2011 (*i.e.*, 60 days after Defendant's receipt of each invoice) (*see* Compl. ¶ 9).

Plaintiff requests that the date of March 28, 2011 – 60 days after the date stated on the last unpaid invoice – be used to calculate the total amount of interest due on the aggregate

15

unpaid purchase prices. (*See* Pl. Proposed Findings, at 5.) Calculating interest from this date would yield a smaller interest award than using numerous dates, in an invoice-by-invoice calculation; similarly, it would yield a smaller award than using a single mid-point date, as courts sometimes do. *See, e.g., Kookmin Bank v. B.G. Fashion, Inc.*, No. 99 Civ. 8622 (RLE), 2000 WL 1880315, at *4 (S.D.N.Y. Dec. 28, 2000) (holding date midway between first and last dates of maturity of 54 unpaid bills of exchange was "reasonable intermediate date" from which to calculate interest under Section 5001). As Plaintiff is thus proposing a conservative approach, which would yield less interest than that to which it is entitled, I recommend that its approach be adopted. *See Potamkin New York, LP v. Gem Auto Brokers Inc.*, 2012 WL 1898896, at *3 (S.D.N.Y. May 1, 2012) (accepting plaintiffs' proposal to calculate interest from date that was "after the last payment was due – and thus long after any potential intermediate date"), *report and recommendation adopted by* 2012 WL 1870949 (S.D.N.Y. May 23, 201)); *Conceria Vignola SRL,* 2010 WL 3377476, at *5 (adopting plaintiff's method of calculating interest where "plaintiff's request is lower than that to which it is entitled" (internal quotations omitted)).

Accordingly, I recommend that the Court award Plaintiff prejudgment interest, at an annual rate of nine percent, on Plaintiff's total, demonstrated contract damages of $1,628,389, calculated from March 28, 2011, through the date that the Court enters its judgment on the Docket.

### 2. Interest on Damages Stemming from Defendant's Assumption of Icer's Debt

Plaintiff and Defendant agree that pre-judgment interest on the Icer debt should be calculated from October 1, 2010, the date by which all of the Icer-related debts were due. (Pl. Proposed Findings, at § II, ¶ 11; Def. Proposed Findings, at § II, ¶ 11.) As to these damages,

16

therefore, I recommend that the Court award Plaintiff prejudgment interest, at an annual rate of nine percent, on Plaintiff's total demonstrated contract damages of $94,307.50, calculated from October 1, 2010, through the date that the Court enters its judgment on the Docket.

### D.  Defendant's "Additional" Claim for Set-Off

As noted above, Defendant additionally asserts that, in a separate dispute, one of its affiliates is owed approximately $1 million by one of Plaintiff's affiliates, and Defendant argues that any judgment against Defendant in this case should be reduced by the amount of Plaintiff's affiliate's debt. (Def. Proposed Findings, at § II, ¶¶ 12-13.) Plaintiff appears to concede that its affiliate owes a debt, but disputes the amount. (*See* Pl. Reply ¶ 10.)

Regardless of whether the asserted debt is in fact owed, the Court should not be wading into this separate dispute, which was not raised by either of the parties in their pleadings in the case before the Court, and which does not even appear to concern them directly. Indeed, neither party has shown that it even has standing to raise or contest a debt purportedly owed by one party's affiliate to the other party's affiliate. The Court has also been presented with no documentary evidence, by either party, to support either's statements as to the basis and amount of the separate debt in question. Most importantly, as a general rule, a defaulting party should not be permitted to seek a general set-off in the context of a damages inquest. *See Greyhound*, 973 F.2d at 161 ("If we were to allow a defaulting party to contest liability and interpose general set-offs at the damages inquest, we would eviscerate the rule governing defaults, and for all practical purposes deprive the district courts of this important case management tool.").

Accordingly, and regardless of whether Plaintiff has any objection to a set-off of some amount, I recommend that no set-off be applied to Plaintiff's damages award in this case. Any

debt that Plaintiff admits is owed can, and should, be dealt with by the entities involved, separate and apart from this inquest proceeding.

## CONCLUSION

For the foregoing reasons, I recommend that Plaintiff be awarded judgment against Defendant as follows:

(1) $1,628,389.00 in compensatory damages, plus pre-judgment interest at a rate of nine percent per annum to be calculated by the Clerk of the Court, from March 28, 2011, to the date that the judgment is entered on the Docket; and

(2) $94,307.50 in compensatory damages, plus pre-judgment interest at a rate of nine percent per annum to be calculated by the Clerk of the Court, from October 1, 2010, to the date that the judgment is entered on the Docket.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, Room 1350, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*,

968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
June 6, 2013

Respectfully submitted,

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Colleen McMahon, U.S.D.J.

All counsel (via ECF)